KENNETH POTRYKUS,

        Plaintiff,

                                          Case No. 26-cv-372-pp

    v.

DORM COMPANY CORPORATION,

        Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 6) AND DISMISSING CASE

---

On March 8, 2026, the plaintiff filed a class action complaint under Title III of the Americans with Disabilities Act (ADA), alleging that the defendant's website was not accessible to him as a legally blind individual. Dkt. No. 1. The defendant has filed a motion to dismiss the complaint for improper venue or in the alternative, for lack of subject-matter jurisdiction based on mootness. Dkt. No. 6. Because the plaintiff's claims are moot, the court will grant the defendant's motion to dismiss.

## I.    Allegations in the Complaint

The plaintiff alleges that he is legally blind and uses screen reader software to access websites. Dkt. No. 1 at ¶2. The plaintiff explains that visually impaired individuals can access websites only by using a combination of keyboards and screen reader software, which reads aloud text and visual information on the website. Id. at ¶23. He asserts that a website's content must

be capable of being reduced to text for a screen-reader to function properly. Id. at ¶25. The plaintiff states that an independent website standards organization, the World Wide Web Consortium, has published Web Content Accessibility Guidelines (known as WCAG 2.2) on designing websites that are accessible to users using screen readers. Id. at ¶26. According to the plaintiff, these guidelines include recommendations such as "adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that visually impaired persons can easily navigate the site." Id.

The plaintiff alleges that the defendant controls and operates the website https://comainducer.com to sell bedding products in Wisconsin and throughout the United States. Id. at ¶¶4, 27–28. He alleges that the website contains several accessibility barriers, including "ambiguous link texts, changing of content without advance warning, unclear labels for interactive elements, lack of alt-text on graphics, and the requirement that transactions be performed solely with a mouse." Id. at ¶32. The plaintiff alleges that on December 30, 2025, he visited the defendant's website to shop for an oversized comforter, but was unable to make a purchase because of these accessibility issues. Id. at ¶40. Specifically, the plaintiff alleges that

> [w]hen he tried to filter products by category, the interactive elements did not announce their state, so [the plaintiff] did not know if a selection was made. Additionally, important images were used as background images without descriptive alternative text, leaving [the plaintiff] unaware of the information they conveyed. When [the plaintiff] added an item to the cart, the confirmation message was not announced by the screen reader, so he did not know if the item was added or how to proceed to checkout.

2

Id. at ¶40. The plaintiff alleges that he still is interested in purchasing products from the website and will visit the website again immediately after the defendant makes it accessible. Id. at ¶41.

The plaintiff asserts that the defendant engaged in intentional discrimination by failing to make its website accessible to legally blind individuals. Id. at ¶¶43–44. The plaintiff seeks to represent a nationwide class of "all legally blind individuals in the United States who have attempted to access the Website and as a result have been denied access to the enjoyment of goods and services offered by the Website, during the relevant statutory period." Id. at ¶51. On behalf of himself and the putative class, the plaintiff brings claims for a violation of Title III of the ADA and for injunctive and declaratory relief. Id. at ¶¶57–74.

## II. Motion to Dismiss

### A. Defendant's Brief (Dkt. No. 7)

The defendant asks the court to dismiss the case, arguing that venue in the Eastern District of Wisconsin is improper based on the forum selection clause in the website's terms of use. Dkt. No. 7 at 4. The defendant provides a copy of the terms and conditions, which state that by accessing the site, the user has "read, understood, and agreed to be bound by all of these Terms of Use" and that if a user does not agree to the terms, he is prohibited from using the site. Id. at 5 (quoting Dkt. No. 8-1 at 2). The defendant states that Section 15 of the terms provides that all disputes filed in court "shall be commenced or

3

prosecuted in the state and federal courts located in Davidson [County], Tennessee." Id. at 6 (quoting Dkt. No. 8-1 at 12).

The defendant argues that a plaintiff is bound by a forum selection clause in a website's terms when "(1) the Website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." Id. at 7 (quoting Domer v. Menard, Inc., 116 F.4th 686, 695 (7th Cir. 2024)). It contends that the website's terms were available via a "Terms & Conditions" link on a section of the website that the plaintiff alleges he accessed. Id. at 8. According to the defendant, the plaintiff alleges he clicked through various links on the website, including links to the defendant's social media platforms, shipping and return policies and information about the company. Id. The defendant asserts that the link to the terms and conditions page was in the same section as those links, suggesting that the plaintiff could have seen and accessed the terms. Id.

The defendant argues that the link to the terms and conditions was conspicuous and placed in a high-traffic area of the website to ensure that users could easily access it, and the plaintiff admits that he accessed that area of the website. Id. The defendant argues that this is sufficient to establish that the plaintiff had notice of the terms and conditions and his continued use of the website manifested his consent to the terms. Id. at 9.

4

In the alternative, the defendant argues that the court should dismiss the plaintiff's claim because it is moot. Id. at 9. The defendant argues that the plaintiff must show a "real and immediate threat" of future injury to sustain a Title III claim. Id. at 10 (quoting Carroll v. New People's Bank, Inc., No. 17CV00044, 2018 WL 1659482, at *2, *4 (W.D. Va. Apr. 5, 2018)). It asserts that an ADA claim based on website accessibility is moot when the defendant shows (1) website accessibility compliance efforts predated the lawsuit; (2) the website complied with WCAG standards; (3) "an affiant with personal knowledge had reviewed the complaint and confirmed that the specific alleged barriers had been remedied and that no such barriers remained"; (4) "the defendant had no intention of undoing those changes or regressing to noncompliance"; and (5) "the defendant committed to keep the Website current and compliant with applicable accessibility standards going forward." Id. at 10–11 (citing Diaz v. The Kroger Co., Case No. 18 Civ. 7953, 2019 WL 2357531, at *3 (S.D.N.Y. June 4, 2019)).

The defendant argues that approximately two years before this case was filed, it began using AccessiBe, a website accessibility tool, to ensure that its website complied with WCAG standards. Id. at 11. It says that AccessiBe was active and functioning on December 30, 2025, when the plaintiff allegedly visited the website, and remains in place today. Id. The defendant provides an accessibility audit performed on January 1, 2026 that purportedly shows the website contained "descriptive buttons, descriptive links, and alternative text for standard images"; complied with standards for "keyboard navigability,

visible focus outlines, skip links, and navigation landmarks"; and contained a screen-reader mode and AccessiBe's accessibility interface. Id. at 11–12. The defendant argues that this audit shows that the website indeed was accessible at the time of the plaintiff's visit two days prior. Id. at 12. The defendant argues that its use of AccessiBe shows that there is no risk of future harm or ADA non-compliance and thus the court should dismiss the case as moot. Id. at 12–13.

B.     Plaintiff's Response (Dkt. No. 12)

The plaintiff responds that the defendant cannot show he had notice of the website's terms of use and unambiguously assented to them. Dkt. No. 12 at 6. He argues that he did not affirmatively agree to the terms by checking a box or clicking an "I agree" button. Id. According to the plaintiff, courts routinely refuse to enforce agreements where users are not required to affirmatively agree to the terms. Id. The plaintiff argues that the website was functionally inaccessible, so there is no presumption that he could have accessed the terms of use to review the forum-selection clause. Id. He maintains that the terms were not sufficiently conspicuous because the link to the terms is hidden in a dropdown menu containing other links to unrelated policies. Id. at 6–7. The plaintiff argues that his attempts to access other parts of the website are not evidence that he opened the terms and agreed to them. Id. at 7. The plaintiff asserts that even if the forum-selection clause was enforceable, the proper remedy would be transfer, not dismissal. Id.

The plaintiff next contends that the case is not moot because it is not "absolutely clear" that the ADA violations cannot be reasonably expected to recur. Id. He says that the allegations in the complaint establish that he encountered several accessibility issues and that they must be accepted as true on a motion to dismiss. Id. at 8. The plaintiff argues that although the defendant has used AccessiBe since April 2021, the website still is not fully accessible, which suggests that the accessibility issues will persist in the future. Id. He maintains that the court may not resolve factual disputes based on materials outside the pleadings at this stage. Id. According to the plaintiff, the defendant cannot rely on AccessiBe's automated review of the website's compliance with WCAG guidelines because it is not an objective review, and automated tools can miss accessibility barriers that manifest during actual use. Id. at 8–9. The plaintiff asserts that the defendant's declaration does not address the specific barriers the plaintiff raised in the complaint, such as the inability to complete checkout by keyboard, and does not state that those barriers have been remedied. Id. at 9. The plaintiff contends that the presence of AccessiBe on the date he accessed the website does not establish that the website was functionally usable by a blind shopper. Id. He argues that the court must deny the defendant's motion to dismiss for mootness. Id. at 10.

## III. Legal Standard

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to assert the defense of lack of subject-matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1).

A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. <u>Bultasa Buddhist Temple of Chi. v. Nielsen</u>, 878 F.3d 570, 573 (7th Cir. 2017). In evaluating a challenge to subject-matter jurisdiction, the court first must determine whether the movant has raised a factual or a facial challenge. <u>Silha v. ACT, Inc.</u>, 807 F.3d 169, 173 (7th Cir. 2015). A factual challenge contends that "there is in fact no subject matter jurisdiction," even if the pleadings are formally sufficient. <u>Id.</u> (internal quotation and citation omitted). In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject-matter jurisdiction exists. <u>Id.</u> In contrast, a facial challenge argues that the plaintiff has not sufficiently "alleged a basis of subject matter jurisdiction." <u>Id.</u> (internal quotation and citation omitted). In reviewing a facial challenge, "the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." <u>Id.</u>

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 501 (2006) (citing <u>Ruhrgas AG v. Marathon Oil Co.</u>, 526 U.S. 574, 583 (1999)). And because subject-matter jurisdiction involves a federal court's power to decide a case, "it 'can never be forfeited or waived.'" <u>Id.</u> (quoting <u>United States v. Cotton</u>, 535 U.S. 625, 630 (2002)). <u>See also</u> <u>Ware v. Best Buy Stores, L.P.</u>, 6 F.4th 726, 731 (7th Cir. 2021) ("'Subject-matter jurisdiction is the first issue in any case[,]' <u>Miller v. Southwest Airlines Co.</u>, 926 F.3d 898, 902 (7th Cir. 2019)" and "'we have an

8

independent obligation to determine that jurisdictional requirements are satisfied[,]' <u>Knopick v. Jayco, Inc.</u>, 895 F.3d 525, 528 (7th Cir. 2018).").

    B.    <u>Rule 12(b)(3)</u>

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to assert the defense of improper venue by motion. In 2003, the Seventh Circuit held that "[a] lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss." <u>Continental Ins. Co. v. M/V ORSULA</u>, 354 F.3d 603, 606-07 (7th Cir. 2003) (citations omitted). In 2013, however, the United States Supreme Court decided <u>Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.</u>, 571 U.S. 49, (2013). In <u>Atlantic Marine</u>, the petitioner asserted that "a party may enforce a forum-selection clause by seeking dismissal of the suit under [28 U.S.C.] § 1406(a) and Rule 12(b)(3)." <u>Id.</u> at 55. The Supreme Court disagreed, concluding that the statute and the rule "allow dismissal only when venue is 'wrong' or 'improper,'" and "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." <u>Id.</u> The Court explained that the question of whether venue is proper is governed by 28 U.S.C. §1391, which

> [p]rovides that "[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this

9

section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." § 1391(b).

Id.

The Atlantic Marine Court held that when a party challenges venue, the only question is whether the case falls into one of those three categories; "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." Id. at 56. "[A] case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." Id.

## IV.    Analysis

Although the defendant raises lack of subject-matter jurisdiction as an "alternative" ground for relief, the court must address that argument first. See Miller, 926 F.3d at 902 ("Subject-matter jurisdiction is the first issue in any case."). The defendant argues that the court has no jurisdiction because the case is moot. This is a factual challenge to the court's subject-matter jurisdiction because it relies on evidence outside the pleadings to show that the plaintiff's claim is moot. See Martinez v. Saul, Case No. 20-CV-00008, 2021 WL 825652 at *2 (N.D. Ill. Mar. 4, 2021) (citing Silha, 807 F.3d at 173).

The Constitution limits the jurisdiction of a federal court to "resolving live 'Cases' and 'Controversies.'" E.F.L. v. Prim, 986 F.3d 959, 962 (7th Cir. 2021) (quoting U.S. Const. art. III, §2, cl. 1). When the issues presented in a case are no longer "live" or the parties "lack a legally cognizable interest in the outcome," the case is moot, and the court loses jurisdiction. Chafin v. Chafin, 568 U.S. 165, 172 (2013); Brown v. Bartholomew Consol. Sch. Corp., 442 F.3d

10

588, 596 (7th Cir. 2006) ("A case becomes moot when a court's decision can no longer affect the rights of litigants in the case before them and simply would be an opinion advising what the law would be upon a hypothetical state of facts."). Relevant here, a claim for injunctive relief becomes moot when "the threat of the act sought to be enjoined dissipates." Brown, 442 F.3d at 598.

The defendant argues this case is moot because it already has taken steps to make its website accessible to legally blind individuals in compliance with WCAG 2.2 guidelines. The January 1, 2026 audit report the defendant submitted shows that the defendant's website contains the specific accessibility accommodations the plaintiff requests, including "button labeling, descriptive links, keyboard navigability, focus outlines, skip links, navigation landmarks, image alternative text, title tag, language tag, and text contrast." Dkt. No. 8 at ¶18; see also Dkt. No. 8-3. The audit report shows that interactive elements on the website are navigable using a keyboard or screen reader. Dkt. No. 8-3 at 8–9.

The plaintiff has presented no evidence to rebut the defendant's showing. Instead, he relies on the allegations in the complaint that he was unable to complete his purchase on the defendant's website. But the defendant is challenging the factual basis for jurisdiction, not the jurisdictional allegations in the complaint. The court may review and weigh outside evidence when resolving a factual challenge to jurisdiction. Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 444 (7th Cir. 2009) (the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever

11

evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."). On a factual challenge to jurisdiction, if the defendant submits evidence that contradicts the allegations in the complaint, "[t]he presumption of correctness that we accord to a complaint's allegations falls away," Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n, 149 F.3d 679, 685 (7th Cir. 1998), and the plaintiff bears the burden to come forward with proof demonstrating that jurisdiction exists, Apex Digital, 572 F.3d at 444–45 (citations omitted). If the plaintiff fails to do so, the court may find that it lacks jurisdiction. Id. at 445 (affirming district court's dismissal for lack subject-matter jurisdiction when the plaintiff failed to produce any affirmative evidence in support of jurisdiction).

Here, the plaintiff has failed to produce any evidence to rebut the defendant's showing that its website is accessible to users with visual impairments. The plaintiff has not carried his burden to show there is a live controversy for the court to resolve. The defendant's evidence shows that it has taken steps to comply with the ADA and make its website accessible to legally blind individuals. The defendant has used AccessiBe since 2021, suggesting that it is unlikely to remove the tool in the future. Because there is no risk of future harm to the plaintiff, the court must dismiss the plaintiff's ADA claim as moot.

The plaintiff's declaratory judgment claim is moot for the same reasons. The Declaratory Judgment Act allows federal courts to issue declaratory judgments only when an "actual controversy" exists. 28 U.S.C. §2201(a). There

12

must be "a substantive controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Simic v. City of Chi., 851 F.3d 734, 740 (7th Cir. 2017). As with injunctive relief, declaratory relief requires "ongoing or impending" harm. Swanigan v. City of Chi., 881 F.3d 577, 583 n.2 (7th Cir. 2018)). Because the defendant already has addressed the alleged website accessibility issues, the plaintiff has not shown that an actual controversy exists between the parties that warrants the court issuing a declaratory judgment. Even if there was a live controversy between the parties, the plaintiff is not entitled to a declaratory judgment under the ADA. "[D]eclaratory relief is inappropriate where a private plaintiff seeks relief for discriminatory acts that have already occurred" because the declaratory judgment would not "prevent the accrual of avoidable damages or otherwise clarify the legal relations between the parties." Marquez v. Riveredge Hosp., Inc., Case No. 21-CV-3369, 2022 WL 832650, at *6 (N.D. Ill. Mar. 21, 2022) (collecting cases).

Because the court lacks subject-matter jurisdiction over the case, the court need not consider the defendant's arguments regarding venue. Although district courts generally give civil plaintiffs at least one opportunity to amend their pleadings, the court need not do so "when 'it is certain' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). Here, amendment would be futile because there is no live case or controversy

13

between the parties. The court will dismiss the complaint and this case for lack of subject-matter jurisdiction.

## V. Conclusion

The court **GRANTS** the defendant's motion to dismiss. Dkt. No. 6.

The court **ORDERS** that this case is **DISMISSED** for lack of subject-matter jurisdiction. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 30th day of June, 2026.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**